IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

JOSE ANTONIO C.C.[1],

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

CIVIL NO. 22-1139 (GLS)

## OPINION AND ORDER

Plaintiff seeks review of the Commissioner of the Social Security Administration's denial of his application for disability insurance benefits. Docket No. 1. Plaintiff sustains that the decision should be reversed because it was not supported by substantial evidence and was based on incorrect legal standards. Docket No. 8. The Commissioner opposed. Docket No. 11. The parties consented to the entry of judgment by a United States Magistrate Judge under the provisions of 28 U.S.C. §636(c). Docket No. 13. After careful review of the administrative record and the parties' briefs, the Commissioner's decision is **AFFIRMED**.

### I.      Procedural Background

Plaintiff worked as special assistant in the Office of the Advocate for People with Impairments. Tr. 120.[2] Plaintiff filed an application for disability insurance benefits claiming that, as of July 18, 2017, the following conditions limited his ability to work: diabetes mellitus II, diabetic neuropathies, bilateral carpel tunnel syndrome, C/D/L degenerative disc disease, HBP, prostatitis, rheumatoid arthritis, gastritis, esophagus hernia, emotional condition. Tr. 801. The application was denied initially and upon reconsideration. Tr. 649-656. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") and, on September 30, 2020, a hearing was held by telephone before ALJ Angel Viera Vargas. Tr. 116-135. Plaintiff testified and was represented by counsel. Id. Vocational Expert Marieva Puig also testified at the hearing. Id.

---

[1]      Plaintiff's last name is omitted for privacy reasons.
[2]      "Tr." refers to the transcript of the record of proceedings.

On February 10, 2021, the ALJ held a supplementary hearing by telephone. Tr. 105-115. Plaintiff was represented by counsel. Id. Vocational Expert Tania Shulo testified at the hearing. Id. The ALJ issued a decision finding that Plaintiff was not disabled, as defined in the Social Security Act, at any time from the onset date of July 18, 2017, through the date of the decision, February 26, 2021. Tr. 84-98. Plaintiff asked the Appeals Council to review the final decision issued by the ALJ but the request was denied on February 1, 2022 (Tr. 1-4), rendering the Commissioner's decision the final decision for review by this Court. On March 18, 2022, Plaintiff filed the Complaint, and both parties filed supporting memoranda. Docket Nos. 1, 8 and 11.

## II.    Legal Framework

### A.  Disability Determination by the SSA: Five Step Process

To receive benefits under the Social Security Act, the ultimate question is whether plaintiff is disabled within the meaning of 42 U.S.C. §423(d). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months. See Id. The severity of the impairment must be such that the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial work which exists in the national economy." 42 U.S.C. §423(d)(2)(A). The burden of proving disability rests on plaintiff. 42 U.S.C. §423(d)(5)(A); Bowen v. Yuckert, 482 U.S. 137, 146 (1987).

The Commissioner engages in a five-step sequential evaluation to determine whether a claimant is disabled. 20 C.F.R. §404.1520; Bowen, 482 U.S. at 140-142. At step one, the ALJ determines whether the claimant is engaged in "substantial gainful activity" and, if so, the claimant is not disabled. 20 C.F.R. §404.1520(b). If not engaged in substantial gainful activity, the Commissioner must determine whether the claimant has a medically severe impairment or combination of impairments that significantly limit claimant's physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c). The step two severity requirement imposes a de minimis burden, which is designed to screen out groundless claims. McDonald v. Sec'y, 795 F.2d 1118, 1123 (1st Cir. 1986).

If the impairment or combination of impairments is severe, the third step applies. The ALJ must determine whether the claimant's severe impairments meet the requirements of a "listed impairment", which the Commissioner acknowledges are so severe as to preclude substantial

2

gainful activity. See 20 C.F.R. §404.1520(d); 20 C.F.R. Part 404, Subpart P, App. 1. If the claimant has a "listed impairment" or an impairment equivalent in severity to a "listed impairment", the claimant is considered disabled. If the claimant's impairment does not meet the severity of a "listed impairment", the ALJ must determine the claimant's Residual Function Capacity ("RFC"). 20 C.F.R. §404.1520(e). An individual's RFC is his or her ability to do physical and mental work activities on a sustained basis despite limitations due to impairments. 20 C.F.R. §404.1520(e); §404.1545(a)(1). At step four, the ALJ must determine, taking into consideration the RFC, whether the claimant can perform past relevant work. 20 C.F.R. §404.1520(f); §416.920(f). If not, then the fifth and final step applies.

At steps one through four, the claimant has the burden of proving he cannot return to his former employment due to the alleged disability. Santiago v. Sec'y, 944 F.2d 1, 5 (1st Cir. 1991). However, at step five, the Commissioner has the burden to prove the existence of other jobs in the national economy that claimant can perform. 20 C.F.R. §404.1520(g); Ortiz v. Sec'y of Health & Human Serv., 890 F.2d 520, 524 (1st Cir. 1989). If there are none, the claimant is entitled to disability benefits. 20 C.F.R. §404.1520(f).

**B. Standard of Review**

The Court may affirm, modify, reverse, or remand the decision of the Commissioner based on the pleadings and transcript. 42 U.S.C. §405(g). In reviewing a decision, the Court's role is limited to deciding whether the ALJ's decision is supported by substantial evidence in the record and based on a correct legal standard. See Id.; Seavey v. Barnhart, 276 F.3d 1 (1st Cir. 2001); Manso-Pizarro v. Sec'y, 76 F.3d 15, 16 (1st Cir. 1996); Ortiz v. Sec'y, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings of fact are conclusive when supported by substantial evidence but not when obtained by ignoring evidence, misapplying the law, or judging matters entrusted to experts. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999). "Substantial evidence" is more than a "mere scintilla"; it is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). Under the substantial evidence standard, "a court looks to an existing administrative record and asks whether it contains 'sufficient evidence' to support the agency's factual determinations" and "the threshold for such evidentiary sufficiency is not high". Biestek v. Berryhill, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019).

A determination of substantiality must be based on the record. Ortiz, 955 F.2d at 769. It is the Commissioner's responsibility to weigh credibility and to draw inferences from the evidence. Rodríguez v. Sec'y, 647 F.2d 218, 222 (1st Cir. 1981). Courts will not second guess the Commissioner's resolution of conflicting evidence. Irlanda Ortiz v. Sec'y, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner's findings must be upheld if a reasonable mind, viewing the evidence in the record, could accept them as adequate to support his conclusion. Rodríguez, 647 F.2d at 222. And even if there is substantial evidence, which could arguably justify a different conclusion, the Court must uphold the ALJ's decision if supported by substantial evidence. 20 C.F.R. §404.1546(c); Rodríguez Pagán v. Sec'y, 819 F.2d 1, 3 (1st Cir.1987). Reversal of an ALJ's decision is warranted only if the ALJ made a legal error in deciding the claim or if the record contains no rationally adequate evidence to justify the ALJ's conclusion. Manso–Pizarro, 76 F.3d at 16; Seavey, 276 F.3d at 9.

### III.     Discussion

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 18, 2017, the alleged onset of disability. Tr. 87. At step two, the ALJ determined that Plaintiff had severe impairments under 20 C.F.R. §404.1520(c): major depressive disorder, rheumatoid arthritis, degenerative disc disease, and carpel tunnel syndrome. Tr. 87. The ALJ further found that Plaintiff had a series of impairments that were not severe because these did not cause, individually or in combination with other impairments, more than minimal work-related difficulties for a continuous period of at least 12 months. Tr. 87. The ALJ concluded that Plaintiff's diabetes mellitus with retinopathy, gastroesophageal reflux disease, renal calculi, and irritable bowel syndrome were non-severe. Tr. 87-88; 916-918; 966-971; 994-1000; 1054-1059; 1110-1118; 1253-1255; 1262-1277; 1331-1339; 1397-1408; 1409; 1438-1439; 1440-1443. The non-severe impairments were evaluated in combination with Plaintiff's severe impairments in determining his RFC. Tr. 88.

The ALJ analyzed Plaintiff's mental impairments and concluded that Plaintiff's major depressive disorder was severe. Tr. 87. The ALJ evaluated four areas of mental functioning. Tr. 89. See 20 C.F.R. §404.1520a(b)(2); §404.1520a(c)(3); 20 C.F.R. Pt. 404, Subpt. P. App. 1 § 12.00 (degree of limitation caused by a mental impairment is evaluated by looking at four broad functional areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing themselves); 20 C.F.R.

§404.1520a(d)(1); <u>Mateo Rivera v. Comm'r</u>, 2020 WL 7786920, at *3 (D.P.R Dec. 30, 2020) (degree of limitation in these areas *mild or better*, ALJ will generally conclude that the mental impairment is not severe). In the first area of functioning, the ALJ found that Plaintiff had moderate limitations because Plaintiff reported being easily distracted and forgetful. Tr. 89; 823-830; 844-851. Plaintiff also reported being unable to follow complex written instructions and sometimes forgetting oral instructions, difficulty finishing tasks, and needing reminders regarding his personal hygiene and administering his medication. Tr. 89; 823-830; 844-851. The ALJ also noted that, on September 22, 2018, psychological consultant, Evelyn García García, evaluated the Plaintiff and reported that his immediate and short-term memory was diminished. Tr. 89; 1137-1142. In the second functional area, the ALJ noted that Plaintiff had a mild limitation because Plaintiff reported having difficulty spending time with people. Tr. 89; 822-830; 845-851. In the third area of functioning, the ALJ concluded that Plaintiff had moderate limitations because he was easily distracted and forgetful, was unable to follow complex written instructions, sometimes forgot oral instructions, and could not finish what he started. Tr. 89; 844-851. In the fourth area of functioning, the ALJ found that Plaintiff had a mild limitation as he reported some difficulties maintaining his personal hygiene and grooming. Tr. 90; 823-830; 844-851.

At the conclusion of the step two analysis, the ALJ stated that the paragraph B analysis was applied in steps three and four:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment of the areas of mental functioning. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis. Tr. 90.

Therefore, at the conclusion of the step two analysis, the ALJ incorporated the paragraph B criteria in the step four RFC determination. The ALJ concluded that Plaintiff did not meet the criteria for a mental impairment under paragraph C because there was no evidence of repeated episodes or decompensation of extended duration or an inability to function. Tr. 90.

At the third step, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met the severity of a "listed impairment" in 20 C.F.R. Part 404, Subpart P, Appendix 1, and proceeded to determine Plaintiff's RFC. Tr. 88. The ALJ concluded

5

that Plaintiff had the RFC to perform sedentary work, as defined in 20 C.F.R. §404.1567(a), and is capable of:

> lifting, carrying, pushing, and pulling 10 pounds occasionally and less than 10 pounds frequently. He can sit for six hours, and stand and walk for two hours in an eight-hour workday. He can occasionally operate foot controls with feet. He can occasionally operate hand controls with both hands. He can frequently perform tasks that require reaching overhead, reaching, fingering, and feeling with both hands and handling with left hand. He can frequently climb ramps and stairs, crouch, and crawl and can occasionally climb ladders, ropes, or scaffolds, balance, stoop, and kneel. He can occasionally work moving mechanical parts and operating a motor vehicle. He can occasionally work in environments with humidity, wetness, extreme cold occasionally, and in vibration. Mentally, he is able to perform simple, routine tasks and perform simple work-related decisions. He is able to deal with changes in a simple work setting. Tr. 90.

In formulating the RFC, the ALJ considered Plaintiff's symptoms and the extent to which these were reasonably consistent with the objective medical evidence and other evidence on record, including medical opinions, studies, medications prescribed, and prior administrative medical findings, as required by 20 CFR §404.1529; §404.1520C and SSR 16-3P, 2017 WL 5180304 (S.S.A.). Tr. 90.

At step four, the ALJ noted that Plaintiff was unable to perform his past relevant work as a special assistant. Tr. 96. Therefore, the ALJ proceeded to step five and concluded that Plaintiff was able to perform jobs that existed in significant numbers in the national economy including document preparer, order clerk, or lens inserter. Tr. 97. Consequently, the ALJ concluded that Plaintiff was not disabled under the Social Security Act. Tr. 97.

Plaintiff argues that the ALJ erred at step two by failing to consider Plaintiff's mental impairments individually or in combination, or his related symptoms, and by formulating an incomplete RFC. Docket No. 8 at 46-47. Plaintiff further argues that the ALJ's RFC assessment was not based on substantial evidence and did not include his functional limitations. Id. at 49-50. And that the ALJ erred by failing to ask the VE certain hypothetical questions. Id. at 49. The Commissioner sustains that the ALJ's decision was based on substantial evidence in the record and correct legal standards. The Court agrees with the Commissioner.

### A.  Mental Impairments

Plaintiff argues that he has marked limitations in the four areas of mental functioning known as the paragraph B criteria, and that symptoms such as nervousness or poor concentration will clearly affect his ability to perform work-related activities. Docket No. 8 at 46-47. The ALJ determined that Plaintiff suffered from major depressive disorder. Tr. 87.  However, the ALJ ultimately concluded that Plaintiff's mental impairments did not cause functional limitations which would preclude him from working in the national economy. Tr. 96. As explained below, such a conclusion is based on substantial evidence in the record.

The ALJ noted that Plaintiff testified that when his employer offered to transfer him to a regional office, he became depressed and decided to retire early. Tr. 91; 123; 125-126. The ALJ also noted that the record showed that Plaintiff sought treatment for his mental condition between August 2017 and July 2018 at the State Insurance Fund ("SIF") (Tr. 1072-1109). Progress notes from SIF from August 2017 and July 2018 reported that Plaintiff presented inadequate concentration and superficial insight and was diagnosed with major depressive affective disorder, without mention of psychotic behavior. Tr. 93; 1073-1109. Per the notes, Plaintiff had good judgment, coherent and adequate speech, cooperative behavior, logical and coherent thought, and adequate memory. Plaintiff was also fully oriented. Plaintiff denied suicidal thoughts and reported feeling better with treatment. Tr. 93; 1073-1109. As noted by the ALJ, on December 15, 2017, Plaintiff was admitted to a psychiatric hospital due to anxiety, mood disorder, and having "bad thoughts". Tr. 93: 919; 944-957. Plaintiff was discharged on December 18, 2017. He was diagnosed with major depressive disorder, but his prognosis was good. Tr. 93; 919. The ALJ further noted that, from January 2, 2018 to January 17, 2018, Plaintiff required a partial admission at San Juan Capestrano Hospital. Tr. 93; 958-962. Plaintiff was diagnosed with a major depressive disorder, single episode without psychosis. Tr. 94; 961.

The ALJ further noted that, on July 31, 2018, the APS Clinic prescribed Plaintiff Wellbutrin XL 300mg, Ativan .5 mg, and Ambien 5mg. Tr. 94; 1199. On August 28, 2018, Plaintiff was also prescribed Paxil 20mg. Tr. 94; 1194. The ALJ further noted that although Plaintiff presented the same symptoms, on February 5, 2019, his prescription for Paxil was increased to 30mg and his Ambien was increased to 10mg. Tr. 94; 1183. In May 2019, Plaintiff's Paxil prescription was again increased to 40 mg. Tr. 94; 1179. The ALJ noted that between May 3, 2019 and November 12, 2020 (the last treatment note on record), Plaintiff's medications and dosages

remained the same. Tr. 94; 1179; 1424. The ALJ further noted that Plaintiff complied with medications and denied side effects. Tr. 94; 1181.

The ALJ considered the APS Clinic treatment records of September 20, 2018. Tr. 93; 1120. The ALJ also considered the findings of consultative examiner, Dr. Luis J. Acevedo Marty, who evaluated Plaintiff on September 20, 2018. Plaintiff reported an emotional condition with symptoms of nervousness, anxiety, depression, insomnia and mood changes. Tr. 93; 1120. The ALJ further noted that Plaintiff was evaluated by psychological consultant, Dr. Evelyn García García, on September 22, 2018. Plaintiff reported problems with memory. Tr. 94; 1141-1142. Plaintiff further reported receiving mental treatment by psychiatrist Dr. Jairo Colón, who prescribed Wellbutrin, Ambien, Ativan, and Paxil. These alleviated his symptoms. Tr. 94; 1139. The ALJ further noted that Plaintiff attended the examination clean and well groomed, and was cooperative, communicative, and fully oriented. His speech was coherent and logical. Tr. 94; 1140. Plaintiff's judgment, insight, attention, and concentration were adequate. Tr. 94; 1141. The ALJ also considered that Dr. García García diagnosed Plaintiff with recurrent depressive disorder and reported that Plaintiff's prognosis was poor. Tr. 94; 1142. But found Dr. García García's report less persuasive because her clinical findings did not support a poor prognosis. Tr. 94; 1137-1144. The ALJ concluded that the exam demonstrated problems with memory that supported a limitation to simple and repetitive tasks. Tr. 94.

The ALJ also considered the opinion of State Agency psychological consultant, Dr. Wanda Machado, who evaluated Plaintiff's record in 2018, and determined that Plaintiff suffered from severe depression. Tr. 95; 621. However, Dr. Machado reported that Plaintiff's ability to remember locations and work-like procedures, and his ability to understand and remember very short and simple instructions were not significantly limited. Tr. 95; 625. And that Plaintiff's ability to complete a normal workday and workweek was not significantly limited. Tr. 95; 626. The ALJ also considered the opinion of State Agency psychological consultant, Dr. Jennifer Cortés, who evaluated Plaintiff's record in 2019, and reported that Plaintiff suffered from severe depression. Tr. 638. Dr. Cortés also concluded that Plaintiff's mental impairments did not significantly limit his ability to complete simple work. Tr. 643. The ALJ found these opinions highly persuasive because they were consistent with the medical evidence on record which supported a finding of moderate mental condition. Tr. 95.

8

Plaintiff was seen by treating physician Dr. Viviana Cabán Garces and he did not report a mental condition. Tr. 94. Treatment records from Dr. Cabán Garces from July 12, 2017, November 7, 2018, June 6, 2018, March 7, 2018, and October 9, 2019, show that Plaintiff denied a mental condition. Tr. 94; 985; 1147; 1152; 1155; 1224. The ALJ considered that APS progress notes from August 2018 to November 2020 revealed that Plaintiff had anxious mood, diminished concentration, regular judgment, and diminished insight. Tr. 94; 1182; 1193; 1278-1330; 1310; 1318; 1421-1437. The ALJ noted that Plaintiff complained of tiredness, sadness, lack of energy, and sleep problems. Tr. 94; 1174; 1181; 1192; 1292; 1426. But Plaintiff had appropriate hygiene and grooming, cooperative behavior, adequate psychomotor activity, euthymic mood, normal control of impulses, no attention deficit, logical, relevant and coherent thought, intact memory. Plaintiff also was fully oriented. Tr. 94; 1173-1200; 1278-1330; 1421-1437. The ALJ further noted that, although Plaintiff was diagnosed with major depressive disorder, recurrent, moderate, and generalized anxiety, Plaintiff denied suicidal and homicidal ideas and perceptual disturbances. Tr. 94; 1173-1200; 1278-1330; 1421-1437. Plaintiff was examined by Dr. Michael Babilonia Román in November 2020. Dr. Babilonia Román reported that Plaintiff presented a normal mental status. Tr. 94; 1444-1445.

Per the foregoing, it is reasonable to conclude that the ALJ did consider Plaintiff's mental impairments and functional limitations when assessing Plaintiff's RFC. There is substantial evidence in the record to sustain the ALJ's conclusion that Plaintiff was mentally "able to perform simple, routine tasks and perform simple work-related decisions [and that he was] able to deal with changes in a simple work setting." Tr. 90. The ALJ evaluated the entire medical record when considering Plaintiff's mental impairments and developing Plaintiff's RFC. The Court detects no error.

### B. RFC Assessment

Plaintiff argues that the ALJ erred by assessing an incomplete RFC because he failed to consider all of Plaintiff's symptoms in combination with the medical evidence and thus failed to meet the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p. Plaintiff further argues that the ALJ failed to consider medical opinions and prior administrative medical findings in accordance with the requirements of 20 C.F.R. § 404.1520c. Docket No. 8 at 47-48. But Plaintiff does not explain what symptoms, medical evidence, or impairments the ALJ failed to consider when assessing Plaintiff's RFC. And the First Circuit has held that arguments not fully developed or

made in passing are deemed waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived").

In any event, the ALJ's RFC assessment was based on substantial evidence. Treatment notes showed that Plaintiff's blood sugar levels and hypertension were well-controlled with treatment and that he had no edema or other notable clinical abnormalities. Tr. 87; 916-18; 965; 1146-47; 1223-24;1253-55. Plaintiff's carpal tunnel syndrome was treated conservatively and clinical Tinel and Phalen signs were negative. Tr. 91-93; 1122; 1450. Electromyogram studies showed cervical stenosis but no signs of polyneuropathy, myopathy, or plexopathy in Plaintiff's limbs. Tr. 92; 1457-61. Plaintiff's physical examinations showed that his gait, reflexes, and sensation were normal. Tr. 92-93; 1122-23; 1127; 1445; 1447.

The ALJ considered Dr. Babilonia Román's opinion that Plaintiff could stand, sit, and walk for a combined total of less than 8 hours per day. Tr. 92; 1448-49. But found Dr. Babilonia Román's opinion less persuasive because he reported that Plaintiff had no dizziness, a normal gait, normal reflexes, and muscle strength. Tr. 92; 1445-46. The ALJ concluded that the record did not support the restrictions posed by Dr. Babilonia Román. Tr. 95. Medical expert Dr. Francisco Joglar reported that Plaintiff had the exertional capacity for a broad range of light work. Tr. 95; 1386-92. The ALJ tempered Plaintiff's RFC in Plaintiff's favor by limiting him to a range of sedentary work. Tr. 95. There can be no error in assigning a more restrictive RFC. Yearling v. Colvin, 292 F. Supp. 3d 515, 520 (D. Mass. 2017) ("If the RFC includes greater limitations than those in a physician's assessment, such limitations cannot be used to discount the ALJ's determination").

### C. Hypothetical Questions to the VE

Plaintiff argues that the ALJ erred by failing to ask the VE various hypothetical questions. Docket No. 8 at 49.  Plaintiff argues that the VE should have been asked the following questions:

1. If we have a person with the same vocational descriptions as the Plaintiff and has the residual functional capacity to perform sedentary work except sitting four hours and standing or walking for only one hour can work in any work in the economy?

2. If we have a person with the same vocational descriptions as the Plaintiff and has the residual functional capacity to perform light work with the same limitation the Administrative Law Judge made but the Plaintiff cannot concentrate for twenty percent of time?

3.      If we have a person with the same vocational descriptions as the Plaintiff and has the residual functional capacity to perform light work with the same limitation the Administrative Law Judge made but the Plaintiff will be absent two days monthly all the months of the year?

4.      If we have a person with the same vocational descriptions as the Plaintiff and has the residual functional capacity to perform light work with the same limitation the Administrative Law Judge made but the Plaintiff needs two more breaks of 20 minutes of the usual breaks they give in the economy?

5.      If we have a person with the same vocational descriptions as the Plaintiff and has the residual functional capacity to perform light work with the same limitation the Administrative Law Judge made but the Plaintiffs manipulative handling, fingering, and feeling with the bilateral upper extremities are occasional?

6.      If we have a person with the same vocational descriptions as the Plaintiff and has the residual functional capacity to perform light work with the same limitation the Administrative Law Judge made but the Plaintiffs limitations of overhead reaching and reaching in any other direction are occasional instead of frequent?

The ALJ limited the Plaintiff to sedentary work in his RFC. Tr. 90. The hypotheticals proposed by Plaintiff assume the exertional capacity for light work rather than limitations to sedentary work,which is more favorable to Plaintiff. Nonetheless, during the hearing on February 10, 2021, the ALJ informed VE Tania Shulo that Plaintiff's RFC was less than the full range of sedentary (Tr. 111) and posed the following hypothetical question to VE Tania Shulo:

[…] [T]he person was 44 years old on the alleged onset date, finished high school, skilled and semi-skilled work, the transferable skills are irrelevant since he is limited to simple work, so 201.28 doesn't favor him, so, we have to continue forward with the analysis because the rule application doesn't have a result that helps the claimant with [his] application. […] I ask you if a person of the same age, academic background, prior experience, and limitations stated can perform any other job in the United States economy." Tr. 113.

VE Tania Shulo testified that at the sedentary level there were jobs available to Plaintiff in the national economy. Tr. 113. The ALJ posed a follow-up question to the VE: whether the jobs available to Plaintiff "don't require manipulation or reaching beyond frequently? The VE

answered in the negative. Tr. 113. The ALJ then posed a second question to the VE: "these jobs don't require the use of foot or hand controls beyond occasionally? Tr. 114. The VE answered "[c]orrect." Tr. 114. Plaintiff's counsel had the opportunity to ask the VE a hypothetical question. Tr. 114. See Tillman v. Comm'r of Soc. Sec. Admin., 2022 WL 58685, at *7 (D. Ariz. Jan. 6, 2022) (no error when Plaintiff's counsel had the opportunity to ask the VE a more specific hypothetical question and Plaintiff failed to explain how the hypothetical posed by the ALJ could have accounted for various limitations). The Court finds no error.

### IV.    Conclusion

The ALJ evaluated the record as a whole and his decision is supported by substantial evidence in the administrative record using correct legal standards. After thoroughly and carefully reviewing the record, and there being no good cause to reverse or remand, the final decision of the Commissioner is **AFFIRMED**, and this action is dismissed.

Judgment is to be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 25th day of September 2023.

s/Giselle López Soler
GISELLE LOPEZ SOLER
United States Magistrate Judge